### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:08-CR-23 |
| | ) | |
| SIDNEY O. SELLERS, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

This matter is before the Court on the Motion to Quash Arrest and Suppress Illegally Obtained Evidence, filed by Defendant on May 6, 2008. For the reasons set forth below, the motion is **DENIED**.


BACKGROUND

Defendant, Sidney Sellers, is charged in a multi-count amended indictment with possession with intent to distribute 50 grams or more of crack cocaine, possession with the intent to distribute a quantity of cocaine, and possession of a firearm in furtherance of a drug crime. Sellers has moved to quash his arrest, and suppress all evidence obtained in violation of the Fourth Amendment. Defendant claims that his stop and arrest were without lawful authority.

Upon receipt of the instant motion, this Court had concerns regarding timeliness. In fact, initially this Court denied the

instant motion.  Defendant, however, renewed the motion on May 12, 2008.  And, after due consideration, this Court permitted Defendant to proceed on the motion.

This Court held an evidentiary hearing on this matter on May 15, 2008, at which three witnesses testified: (1) Hubert Davidson ("Agent Davidson"), a special agent with the Drug Enforcement Administration ("DEA"), (2) Michael Smith ("Cpl. Smith"), a corporal with the Gary Police Department, and (3) Douglas Geyer ("Officer Geyer"), an officer with the Gary Police Department.  At the conclusion of the hearing, the Court took the instant motion under advisement.  In making the following findings of fact, the Court considered the evidence presented and the credibility of the witnesses.

FINDINGS OF FACT

The Court has considered the evidence presented during the hearing as well as the credibility of Agent Davidson, Cpl. Smith, and Officer Geyer, whose testimony this Court finds credible. Therefore, the Court finds as follows:

On February 18, 2008, a confidential informant ("CI") contacted Agent Davidson, stating that he had arranged for a crack cocaine supplier to deliver nine ounces of crack to him the following day.  The CI indicated that he had communicated with someone by the name of Brian L/N/U ("Brian"), in Texas, who would

be brokering the deal between the CI and individual named Sid L/N/U ("Sid"). CI told Agent Davidson that he had met Sid on more than one prior occasion and had previously purchased crack from Sid. The CI described Sid as a black male with short hair and gold teeth in his mid-thirties who likes to drive fancy cars. In his previous meetings with Sid, the CI had seen Sid drive various cars, including a Dodge Magnum, a Nissan Maxima, a Denali, and a newer foreign car, possibly a Honda.

As a result of the information received from the CI, on the morning of February 19, 2008, Agent Davidson met with Officer Geyer, Agent Ritchie of the DEA, and the CI at a truck stop in Gary, Indiana. They discussed what would take place that day. Specifically, Agent Davidson testified that they discussed the DEA's desire to conduct a "walled off" traffic stop, in which the Gary Police Department would develop its own probable cause by watching the vehicle for any traffic violations. This would allow the DEA to protect the identify of their CI so that the DEA could continue its investigation. Cpl. Smith arrived at this meeting when it was concluding, and Officer Geyer filled him in on the details of the operation, and informed him he was to perform a traffic stop on the Defendant's vehicle.

At approximately 8:19 a.m. on February 19, 2008, the CI called Brian. Although Agent Davison was unable to monitor or record the call due to a technical malfunction, the CI advised Agent Davidson

that Brian had told him to call when he was ready and that Sid would meet the CI on Grant Street in Gary, Indiana.

A series of recorded phone calls took place that morning between the CI and Brian, in an attempt to arrange the details of the transaction. During these telephone calls, the CI attempted, unsuccessfully, to arrange a meet at a McDonald's restaurant in Gary, Indiana. At 11:25 a.m., the CI was advised by Brian that Sid was coming up to Cline Ave. At 11:31 a.m., Brian called the CI and advised that Sid would meet the CI "up there", which appears to be a reference to Champs Liquor Store ("Champs") on Grant Street in Gary, Indiana. Agent Davidson testified that "eventually through the phone calls we were able to learn that the individual known as Sid was currently at Champs Liquor Store." Agent Davidson testified that this was learned through Brian. Agent Davidson also testified that Champs is located just south of the truck stop on Grant Street where the officers met with the CI earlier that day.

After being informed that Sid was at Champs, Agent Davidson and Agent Ritchie drove the CI passed Champs. The CI observed the silver Nissan Maxima in the parking lot, and said that it was similar to one Sid would drive, based on his previous experience. The silver Nissan was one of only two vehicles at Champs at the time, and the only one that was occupied by a black male. Additionally, the vehicle was backed into the parking spot. Officer Geyer testified that his experience led him to believe that

-4-

a drug dealer might back into a spot for good visibility and also to facilitate a quick exit if necessary.

Throughout the morning, Cpl. Smith was kept informed via radio of information pertinent to the DEA's investigation, including a description of the vehicle they suspected Sid was driving.  Cpl. Smith was in the area of 3100 Grant Street when he observed a silver Nissan traveling northbound on Grant Street.  He testified that he observed the Nissan stop in the left lane blocking the flow of traffic and causing vehicles to swerve to avoid a collision, and then make a quick lane change causing vehicles to swerve.  Cpl. Smith was in front of the Nissan at the time of the traffic violations, and observed them through his rear-view mirror.  After observing the traffic violations, Cpl. Smith activated his emergency lights and siren, and effected a traffic stop on the silver Nissan.  The traffic stop occurred on the westbound I-80/94 and Grant Street ramp.

Shortly after the Nissan was curbed, Agent Davidson drove the CI by the silver Nissan at a slow speed.  The CI was able to identify the Nissan's driver as the individual named Sid from whom he had previously purchased crack cocaine.

After Cpl. Smith curbed the vehicle, Cpl. Smith approached the silver Nissan and spoke with the driver, later identified as Sidney Sellers ("Sellers").  Cpl. Smith asked Sellers for his driver's license and vehicle registration.  Cpl. Smith advised Sellers of

-5-

the reason for the traffic stop, at which time the Defendant admitted to the violations, and attempted to justify them to Cpl. Smith.  Sellers provided Cpl. Smith with his driver's license, but indicated that he could not locate his vehicle registration.

Officer Geyer was also on the scene.  Officer Geyer, at Cpl. Smith's request, ran the Defendant's driver's information and advised Cpl. Smith that Sellers' driver's license was valid and that there were no active warrants for Sellers' arrest. Thereafter, Cpl. Smith returned to the Nissan to ask Sellers if he had found the car registration yet.  Cpl. Smith testified that Sellers appeared nervous and was repeatedly fumbling through the same spot in his wallet.  Based on this observation as well as officer safety, Cpl. Smith asked Sellers to step out of the car and speak with him at the rear of the vehicle.

Also for officer safety, Cpl. Smith asked Sellers if he had any weapons on his person.  Sellers responded that he did not have any weapons on his person, but did have a gun in the vehicle, for which he had a permit in his wallet.  Sellers produced an Illinois firearm owner's identification card.  Cpl. Smith advised Sellers that he could not legally carry a handgun in Indiana without a valid permit, and that the Illinois card did not authorize Sellers to have a gun in Indiana.  Based on Sellers' description of where the gun was located, Officer Geyer entered the front seat of the vehicle and retrieved a loaded Glock model 19, 9mm semiautomatic

handgun (serial #GXM249) from between the driver's seat and the center console.   Then, Sellers was placed under arrest for possessing a handgun without a permit.   Officer Geyer transported Sellers to the Gary Police Department in his squad car.

Cpl. Smith began an inventory search of the silver Nissan, pursuant to Gary Police Department policy, prior to towing the vehicle away from the scene.   During this inventory search, Cpl. Smith located one orange plastic bag containing smaller clear knotted plastic bags in the trunk of the vehicle.   Those smaller clear plastic bags contained an off-white rock-like substance which, based on his training and experience, Cpl. Smith believed to be cocaine.

Agent Davidson and Special Agent Ritchie, also of the DEA, responded to the scene.   The tow request was cancelled, and the vehicle and suspected cocaine were turned over to Agent Davidson. After being issued two citations for his traffic offenses, Sellers was released to the custody of the DEA.


CONCLUSIONS OF LAW

The Fourth Amendment protects persons from unreasonable searches and seizures and this protection has been extended to the states through the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); U.S. Const. Amend. IV.   The Fourth Amendment prohibits a warrantless search,

unless the search falls under one of the recognized exceptions to the warrant requirement.  *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985).  If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search.  *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001).  The Government has argued that several different exceptions to the warrant requirement apply here.

## Cpl. Smith Had Probable Cause to Conduct the Traffic Stop

The Government has argued that Cpl. Smith had probable cause to conduct a traffic stop of Sellers for two reasons: the DEA's probable cause can be imputed to Cpl. Smith, and Cpl. Smith had independent probable cause to conduct the stop.

### Based on Independent Probable Cause

The Supreme Court has held that a decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996).  Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). "Ulterior motives do not invalidate a police stop for a traffic

-8-

violation, no matter how minor, if a motor vehicle law infraction
is detected." *United States v. Murray*, 89 F.3d 459, 461 (7th Cir.
1996); *United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir. 1993);
*see Whren*, 517 U.S. at 810 (holding that the "decision to stop an
automobile is reasonable where the police have probable cause to
believe that a traffic violation has occurred.")

The police may not use a traffic stop as a pretext to search
for evidence. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir.
1995).  However, the Seventh Circuit has held that an arrest or
stop is constitutional regardless of hidden motive "so long as the
police are doing no more than they are legally permitted and
objectively authorized to do." *United States v. Trigg*, 878 F.2d
1037, 1041 (7th Cir. 1989); *see also Whren*, 517 U.S. at 813
(holding that actual motivations of police play no role in Fourth
Amendment probable cause analysis - a pretextual stop may be lawful
if it is objectively reasonable).

First, the Court finds credible Cpl. Smith's testimony that he
saw the silver Nissan in question stop in the left lane blocking
the flow of traffic, and make a quick lane change to the right
lane, causing vehicles to swerve to avoid colliding with the
Nissan.  Second, Cpl. Smith had sufficient information to believe
that Sellers committed a traffic infraction.  Although no code
violation was cited during the suppression hearing, Indiana Code
section 9-21-8-24 provides in pertinent part that "[a] person may

not . . . change from one (1) traffic lane to another; unless the
movement can be made with reasonable safety." Ind. Code § 9-21-8-
24.  Moreover, an actual motor regulatory violation need not even
have occurred - probable cause to believe that a traffic violation
has occurred is sufficient to justify a traffic stop. *United
States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (citations
omitted) ("[T]he issue here is not whether he would have been
convicted of a violation in traffic court.  The issue is whether
there was probable cause that a traffic law had been violated.").
Here, Cpl. Smith's observations of the silver Nissan stop in the
left lane blocking traffic, and then make a quick lane change to
the right lane, causing vehicles to swerve, gave him probable cause
to believe Sellers committed a traffic violation.

To the extent Sellers argues that improper lane usage was too
minor of an offense to justify the stop, the Seventh Circuit has
indicated that "our objective analysis is indifferent to the
relatively minor nature of the traffic offense." *United States v.
Williams*, 106 F.3d 1362, 1365-66 (7th Cir. 1997) (citing *United
States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996) (probable cause
existed where automobile was missing rear license plate in
violation of Wisconsin law); *United States v. Smith*, 80 F.3d 215
(7th Cir. 1996) (probable cause was formed where air freshener
hanging from rear view mirror, or where cracked windshield and
automobile crossed fog lines, or where improper use of turn signal

-10-

and automobile straddled lanes, all in violation of Illinois law)).

Because Cpl. Smith witnessed the Nissan stop in the left lane blocking the flow of traffic, and then make a quick lane change causing other vehicles to swerve, the Court finds that the officer had probable cause to believe that the driver, Sellers, had committed a traffic offense, and posed a danger to others on the road. Therefore, this Court concludes that Cpl. Smith had probable cause to stop Sellers' car for committing a traffic violation, and that the stop was proper.

### Based on the Probable Cause Imputed to him Through the DEA

The DEA had probable cause to conduct a stop of Sellers' vehicle. The DEA had knowledge of conversations between the CI and Brian, in Texas, who was brokering a deal for the sale of a  large quantity of crack and power cocaine between the CI and Sid. The phone calls between the CI and Brian revealed that Sid was at Champs. The DEA knew from the CI that Sid liked to drive fancy cars, and knew that he changed vehicles frequently. The silver Nissan in the parking lot of Champs was consistent with the type of vehicle Sid would drive, and present at the time and place expected pursuant to the recorded telephone conversations. It was one of two vehicles in the lot, and the only one with an occupant. The vehicle was backed in to the parking spot, which is consistent with a need to have a good view of the area and possibly escape with

ease.  Accordingly, the DEA could have stopped the silver Nissan even in the absence of a traffic violation.

The DEA, however, made a strategic decision to conduct a "walled off" stop of Sid whereby they would rely on the local police agencies independent probable cause rather than their own probable cause, in an attempt to protect the identity of their CI and the integrity of their ongoing investigation.  The Government argues that, even if Cpl. Smith lacked probable cause to stop and arrest Sellers for a traffic violation, the DEA's probable cause should be imputed to Cpl. Smith.

In *United States v. Celio*, 945 F.2d 180 (7th Cir. 1991), the DEA requested that state police stop and search a truck on suspicion of drug smuggling.  The truck was stopped, towed to the police station, and searched for four hours, based solely on the DEA's request.  The Seventh Circuit, relying on *United States v. Hensley*, 469 U.S. 221 (1985) upheld the search.  In so holding, it was noted that the state trooper was "merely acting as an 'extension' or agent of the DEA agent and she could act on the DEA agent's suspicions."  Similarly, Cpl. Smith was acting as an agent of the DEA, and had probable cause to stop the silver Nissan even in the absence of the traffic violation.  In fact, unlike the agent in *Celio*, Cpl. Smith was not acting blindly on the DEA's request; he possessed detailed information regarding the operation that the officer in *Celio* was lacking.

-12-

<u>Even if Cpl. Smith Lacked Probable Cause, he had Reasonable
Suspicion to Stop the Vehicle Under *Terry*.</u>

The Government also argued that, even if Cpl. Smith lacked
probable cause, he had reasonable suspicion to conduct a traffic
stop for further investigation under *Terry v. Ohio,* 392 U.S. 1
(1968). Probable cause is not necessary for police to conduct an
investigatory stop, limited in scope and executed by reasonable
means. *Terry*, 392 U.S. at 18-20. To make an investigatory stop,
an officer needs only reasonable suspicion supported by articulable
facts that criminal activity is afoot. *Id.; United States v.
Jackson*, 300 F.3d 740, 745 (7th Cir. 2002). Reasonable suspicion
is "some objective manifestation that the person stopped is, or is
about to be, engaged in criminal activity." *Jackson*, 300 F.3d at
745 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

The reasonableness of a *Terry* stop is evaluated by looking at
whether the officers' actions were justified at the inception of
the stop; and whether the stop was reasonably related in scope to
the circumstances that justified the stop in the first place.
*Jackson*, 300 F.3d at 745 (citing *United States v. Swift*, 220 F.3d
502, 506 (7th Cir. 2000)). The totality of circumstances known to
the officers at the time of the stop must be considered in making
this evaluation. *Id.* (citing *Swift*, 220 F.3d at 506). The
totality of the circumstances includes the "experience of the law
enforcement agent and the behavior and characteristics of the
suspect." *Id.* (quoting *United States v. Odum*, 72 F.3d 1279, 1284

-13-

(7th Cir. 1995)).

For the reasons articulated above, and based upon the totality of the circumstances, the collective knowledge of the DEA and Cpl. Smith constitutes reasonable suspicion to stop Sellers. The series of recorded phone calls with the CI indicate that Defendant, a suspected drug dealer, was at Champs store to engage in a drug transaction. Agent Davidson and Agent Ritchie drove the CI past Champs, and he observed the Nissan in the parking lot, and said it was similar to one Sid would drive. That car was only one of two vehicles at Champs at that time, and the only one which was occupied by a black male. Collectively, this information constitutes reasonable suspicion that Sellers was engaged in, or about to be engaged in criminal activity.

The reasonableness of a *Terry* stop is evaluated by looking at "whether the officers' actions were justified at the inception of the stop," (this Court just determined that the actions were justified), and "whether the stop was reasonably related in scope to the circumstances that justified the stop in the first place." *Jackson*, 300 F.3d at 745. In this case, both the scope and the duration of the stop was proper. Duration is a critical aspect of reasonableness and "the detention must last no longer than necessary to effectuate the purpose of the stop." *United States v. Childs*, 256 F.3d 559, 564 (7th Cir. 2001) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)), *vacated on other grounds*, 277 F.3d 947 (en banc)). Here, there is no evidence that the detention was overly lengthy, and the Court does not believe it was an

unreasonably long seizure.   Furthermore, the scope of the search was not excessive.   Cpl. Smith's initial questioning about Defendant's license and registration is standard procedure, as is checking that information to determine if there are any outstanding warrants.  Cpl. Smith then noticed that Defendant was nervous, and learned that, after the stop occurred, the DEA had driven its CI past the vehicle slowly and the CI had identified the driver as the individual named Sid whom he expected to be delivering the 9 ounces of cocaine.  Moreover, the request to have Sellers exit the vehicle was proper to ensure the safety of all the parties.  *See Mimm*, 434 U.S. at 111.  Once outside the vehicle, Cpl. Smith asked Sellers if he had any weapons, and he replied that he had one in his vehicle. Sellers was unable to produce a valid permit that would allow him to possess the gun in Indiana.  At that point, there was probable cause to believe an offense had been committed, and Sellers was placed under arrest.  Additionally, even if Cpl. Smith had only reasonable suspicion to stop sellers initially, once Sellers produced his driver's license identifying himself as Sidney Sellers, Cpl. Smith had probable cause to believe Sellers was the individual whom the DEA was seeking in connection was its drug investigation.

It was Appropriate for Cpl. Smith to Order Sellers Out of the Vehicle

      There was nothing inappropriate about Smith's order that

Sellers step out of the vehicle.  Additionally, "when there is reasonable suspicion that the occupants of a vehicle are engaged in other illegal activity, an officer may prolong a traffic stop to investigate that activity." *United States v. Walden*, 146 F.3d 487, 490 (7th Cir. 1998).  In this case, Cpl. Smith noticed that Sellers appeared to be very nervous, and he was fumbling through his wallet.  Additionally, Cpl. Smith indicated he had concerns about his safety due to the position of Sellers vehicle on the expressway ramp, and desired to continue their conversation at the rear of the vehicle for that reason. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6 (1977)("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.")

Sellers cites *United States v. Wilkie*, 2006 WL 1307457, Nos. 05-2878, 05-3155, at *3 (7th Cir. May 5, 2006), and *United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir. 2005), for the proposition that when a defendant "appears nervous," this subjective impression contributes nothing to the objective basis for suspecting criminal activity.  Nevertheless, other circumstances established a reasonable basis for Cpl. Smith to ask Sellers to step out of his vehicle and speak to him at the rear of Defendant's vehicle.  For example, Cpl. Smith testified that he was concerned about his safety because the traffic stop occurred on the westbound I-80/94 and Grant Street ramp.  As the United States Supreme Court has stated:

-16-

> The hazard of accidental injury from passing
> traffic to an officer standing on the driver's side
> of the vehicle may also be appreciable in some
> situations. Rather than conversing while standing
> exposed to moving traffic, the officer prudently
> may prefer to ask the driver of the vehicle to step
> out of the car and off onto the shoulder of the
> road where inquiry may be pursued with greater
> safety to both.

*Mimms*, 434 U.S. at 111.


## The Inventory Search Was Reasonable

First, a police officer may lawfully impound a vehicle after arresting its driver if impoundment is in furtherance of the police department's public safety or community caretaking functions, consistent with standard department procedures, and if the arrestee is unable to provide for speedy and efficient removal of the car. *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996). In this case, the impoundment of Sellers' car was reasonable because he was stopped pursuant to a valid traffic stop and then arrested for possessing a handgun without the proper permit. The Gary Police Department has a standardized policy for impoundment which seems proper to this Court.


Second, once lawfully impounded, the police may inventory the contents of an automobile pursuant to standardized routine or procedure. *See South Dakota v. Opperman*, 428 U.S. 364, 368-60 (1976); *United States v. Jackson*, 189 F.3d 502, 508-09 (7th Cir. 1999). Inventory searches are a well recognized exception to the Fourth Amendment warrant requirement. *Colorado v. Bertine*, 479

U.S. 367, 376-77 (1987); *Opperman*, 428 U.S. at 372-73.  The Seventh Circuit has defined the permissible scope of a warrantless inventory search as constitutional if: (1) the individual has been lawfully arrested; and (2) the search satisfies the Fourth Amendment standard of reasonableness, *i.e.*, is conducted as part of a standard procedure incident to incarcerating an arrested person. *Jackson*, 189 F.3d 502 at 508.   Both requirements are satisfied here.   Defendant was lawfully arrested and, upon reviewing the entire record, the Court is satisfied that the inventory search was conducted pursuant to standard Gary Police Department procedure.

The *Opperman* Court identified three bases for permitting inventory searches: (1) to protect owner's property while it is in police custody; (2) to protect the police against claims or disputes over lost or stolen property; and (3) to protect the police and public from potential danger.  *Opperman*, 428 U.S. at 369.  All three bases were satisfied in this case.  The inventory search was consistent with the goal of protecting Defendant's property, as well as maintaining safety.  It also served to protect the police officers and the public in light of finding a loaded firearm inside the passenger compartment of the vehicle and a plastic bag which contained a substance that appeared to be cocaine.  The inventory search of Sellers' Nissan was reasonable, and did not violate Defendant's constitutional rights.


CONCLUSION

For the reasons set forth above, the Motion to Suppress is

-18-

**DENIED.**


**DATED: May 20, 2008**                    **/s/ RUDY LOZANO, Judge**
                                           **United States District Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,       )
                                )
Plaintiff,                      )
                                )
vs.                             )       No. 2:08-CR-23
                                )
SIDNEY O. SELLERS,              )
                                )
Defendant.                      )

## OPINION AND ORDER

This matter is before the Court on the Motion to Quash Arrest and Suppress Illegally Obtained Evidence, filed by Defendant on May 6, 2008.  For the reasons set forth below, the motion is **DENIED**.


BACKGROUND

Defendant, Sidney Sellers, is charged in a multi-count amended indictment with possession with intent to distribute 50 grams or more of crack cocaine, possession with the intent to distribute a quantity of cocaine, and possession of a firearm in furtherance of a drug crime.  Sellers has moved to quash his arrest, and suppress all evidence obtained in violation of the Fourth Amendment. Defendant claims that his stop and arrest were without lawful authority.

Upon receipt of the instant motion, this Court had concerns regarding timeliness.  In fact, initially this Court denied the

instant motion.  Defendant, however, renewed the motion on May 12, 2008.  And, after due consideration, this Court permitted Defendant to proceed on the motion.

This Court held an evidentiary hearing on this matter on May 15, 2008, at which three witnesses testified: (1) Hubert Davidson ("Agent Davidson"), a special agent with the Drug Enforcement Administration ("DEA"), (2) Michael Smith ("Cpl. Smith"), a corporal with the Gary Police Department, and (3) Douglas Geyer ("Officer Geyer"), an officer with the Gary Police Department.  At the conclusion of the hearing, the Court took the instant motion under advisement.  In making the following findings of fact, the Court considered the evidence presented and the credibility of the witnesses.

FINDINGS OF FACT

The Court has considered the evidence presented during the hearing as well as the credibility of Agent Davidson, Cpl. Smith, and Officer Geyer, whose testimony this Court finds credible.  Therefore, the Court finds as follows:

On February 18, 2008, a confidential informant ("CI") contacted Agent Davidson, stating that he had arranged for a crack cocaine supplier to deliver nine ounces of crack to him the following day.  The CI indicated that he had communicated with someone by the name of Brian L/N/U ("Brian"), in Texas, who would

be brokering the deal between the CI and individual named Sid L/N/U ("Sid").  CI told Agent Davidson that he had met Sid on more than one prior occasion and had previously purchased crack from Sid. The CI described Sid as a black male with short hair and gold teeth in his mid-thirties who likes to drive fancy cars.  In his previous meetings with Sid, the CI had seen Sid drive various cars, including a Dodge Magnum, a Nissan Maxima, a Denali, and a newer foreign car, possibly a Honda.

As a result of the information received from the CI, on the morning of February 19, 2008, Agent Davidson met with Officer Geyer, Agent Ritchie of the DEA, and the CI at a truck stop in Gary, Indiana.  They discussed what would take place that day. Specifically, Agent Davidson testified that they discussed the DEA's desire to conduct a "walled off" traffic stop, in which the Gary Police Department would develop its own probable cause by watching the vehicle for any traffic violations.  This would allow the DEA to protect the identify of their CI so that the DEA  could continue its investigation.  Cpl. Smith arrived at this meeting when it was concluding, and Officer Geyer filled him in on the details of the operation, and informed him he was to perform a traffic stop on the Defendant's vehicle.

At approximately 8:19 a.m. on February 19, 2008, the CI called Brian.  Although Agent Davison was unable to monitor or record the call due to a technical malfunction, the CI advised Agent Davidson

that Brian had told him to call when he was ready and that Sid would meet the CI on Grant Street in Gary, Indiana.

A series of recorded phone calls took place that morning between the CI and Brian, in an attempt to arrange the details of the transaction.  During these telephone calls, the CI attempted, unsuccessfully, to arrange a meet at a McDonald's restaurant in Gary, Indiana.  At 11:25 a.m., the CI was advised by Brian that Sid was coming up to Cline Ave.  At 11:31 a.m., Brian called the CI and advised that Sid would meet the CI "up there", which appears to be a reference to Champs Liquor Store ("Champs") on Grant Street in Gary, Indiana.  Agent Davidson testified that "eventually through the phone calls we were able to learn that the individual known as Sid was currently at Champs Liquor Store."  Agent Davidson testified that this was learned through Brian.  Agent Davidson also testified that Champs is located just south of the truck stop on Grant Street where the officers met with the CI earlier that day.

After being informed that Sid was at Champs, Agent Davidson and Agent Ritchie drove the CI passed Champs.  The CI observed the silver Nissan Maxima in the parking lot, and said that it was similar to one Sid would drive, based on his previous experience. The silver Nissan was one of only two vehicles at Champs at the time, and the only one that was occupied by a black male. Additionally, the vehicle was backed into the parking spot. Officer Geyer testified that his experience led him to believe that

-4-

a drug dealer might back into a spot for good visibility and also to facilitate a quick exit if necessary.

Throughout the morning, Cpl. Smith was kept informed via radio of information pertinent to the DEA's investigation, including a description of the vehicle they suspected Sid was driving. Cpl. Smith was in the area of 3100 Grant Street when he observed a silver Nissan traveling northbound on Grant Street. He testified that he observed the Nissan stop in the left lane blocking the flow of traffic and causing vehicles to swerve to avoid a collision, and then make a quick lane change causing vehicles to swerve. Cpl. Smith was in front of the Nissan at the time of the traffic violations, and observed them through his rear-view mirror. After observing the traffic violations, Cpl. Smith activated his emergency lights and siren, and effected a traffic stop on the silver Nissan. The traffic stop occurred on the westbound I-80/94 and Grant Street ramp.

Shortly after the Nissan was curbed, Agent Davidson drove the CI by the silver Nissan at a slow speed. The CI was able to identify the Nissan's driver as the individual named Sid from whom he had previously purchased crack cocaine.

After Cpl. Smith curbed the vehicle, Cpl. Smith approached the silver Nissan and spoke with the driver, later identified as Sidney Sellers ("Sellers"). Cpl. Smith asked Sellers for his driver's license and vehicle registration. Cpl. Smith advised Sellers of

-5-

the reason for the traffic stop, at which time the Defendant admitted to the violations, and attempted to justify them to Cpl. Smith.  Sellers provided Cpl. Smith with his driver's license, but indicated that he could not locate his vehicle registration.

Officer Geyer was also on the scene.  Officer Geyer, at Cpl. Smith's request, ran the Defendant's driver's information and advised Cpl. Smith that Sellers' driver's license was valid and that there were no active warrants for Sellers' arrest. Thereafter, Cpl. Smith returned to the Nissan to ask Sellers if he had found the car registration yet.  Cpl. Smith testified that Sellers appeared nervous and was repeatedly fumbling through the same spot in his wallet.  Based on this observation as well as officer safety, Cpl. Smith asked Sellers to step out of the car and speak with him at the rear of the vehicle.

Also for officer safety, Cpl. Smith asked Sellers if he had any weapons on his person.  Sellers responded that he did not have any weapons on his person, but did have a gun in the vehicle, for which he had a permit in his wallet.  Sellers produced an Illinois firearm owner's identification card.  Cpl. Smith advised Sellers that he could not legally carry a handgun in Indiana without a valid permit, and that the Illinois card did not authorize Sellers to have a gun in Indiana.  Based on Sellers' description of where the gun was located, Officer Geyer entered the front seat of the vehicle and retrieved a loaded Glock model 19, 9mm semiautomatic

-6-

handgun (serial #GXM249) from between the driver's seat and the center console.   Then, Sellers was placed under arrest for possessing a handgun without a permit.   Officer Geyer transported Sellers to the Gary Police Department in his squad car.

Cpl. Smith began an inventory search of the silver Nissan, pursuant to Gary Police Department policy, prior to towing the vehicle away from the scene.   During this inventory search, Cpl. Smith located one orange plastic bag containing smaller clear knotted plastic bags in the trunk of the vehicle.   Those smaller clear plastic bags contained an off-white rock-like substance which, based on his training and experience, Cpl. Smith believed to be cocaine.

Agent Davidson and Special Agent Ritchie, also of the DEA, responded to the scene.   The tow request was cancelled, and the vehicle and suspected cocaine were turned over to Agent Davidson. After being issued two citations for his traffic offenses, Sellers was released to the custody of the DEA.


CONCLUSIONS OF LAW

The Fourth Amendment protects persons from unreasonable searches and seizures and this protection has been extended to the states through the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); U.S. Const. Amend. IV.   The Fourth Amendment prohibits a warrantless search,

unless the search falls under one of the recognized exceptions to the warrant requirement.  *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985).  If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search.  *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001).  The Government has argued that several different exceptions to the warrant requirement apply here.

## Cpl. Smith Had Probable Cause to Conduct the Traffic Stop

The Government has argued that Cpl. Smith had probable cause to conduct a traffic stop of Sellers for two reasons: the DEA's probable cause can be imputed to Cpl. Smith, and Cpl. Smith had independent probable cause to conduct the stop.

### Based on Independent Probable Cause

The Supreme Court has held that a decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996).  Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). "Ulterior motives do not invalidate a police stop for a traffic

-8-

violation, no matter how minor, if a motor vehicle law infraction is detected." *United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996); *United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir. 1993); *see Whren*, 517 U.S. at 810 (holding that the "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.")

The police may not use a traffic stop as a pretext to search for evidence. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995). However, the Seventh Circuit has held that an arrest or stop is constitutional regardless of hidden motive "so long as the police are doing no more than they are legally permitted and objectively authorized to do." *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989); *see also Whren*, 517 U.S. at 813 (holding that actual motivations of police play no role in Fourth Amendment probable cause analysis - a pretextual stop may be lawful if it is objectively reasonable).

First, the Court finds credible Cpl. Smith's testimony that he saw the silver Nissan in question stop in the left lane blocking the flow of traffic, and make a quick lane change to the right lane, causing vehicles to swerve to avoid colliding with the Nissan. Second, Cpl. Smith had sufficient information to believe that Sellers committed a traffic infraction. Although no code violation was cited during the suppression hearing, Indiana Code section 9-21-8-24 provides in pertinent part that "[a] person may

-9-

not . . . change from one (1) traffic lane to another; unless the movement can be made with reasonable safety." Ind. Code § 9-21-8-24. Moreover, an actual motor regulatory violation need not even have occurred - probable cause to believe that a traffic violation has occurred is sufficient to justify a traffic stop. *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (citations omitted) ("[T]he issue here is not whether he would have been convicted of a violation in traffic court. The issue is whether there was probable cause that a traffic law had been violated."). Here, Cpl. Smith's observations of the silver Nissan stop in the left lane blocking traffic, and then make a quick lane change to the right lane, causing vehicles to swerve, gave him probable cause to believe Sellers committed a traffic violation.

To the extent Sellers argues that improper lane usage was too minor of an offense to justify the stop, the Seventh Circuit has indicated that "our objective analysis is indifferent to the relatively minor nature of the traffic offense." *United States v. Williams*, 106 F.3d 1362, 1365-66 (7th Cir. 1997) (citing *United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996) (probable cause existed where automobile was missing rear license plate in violation of Wisconsin law); *United States v. Smith*, 80 F.3d 215 (7th Cir. 1996) (probable cause was formed where air freshener hanging from rear view mirror, or where cracked windshield and automobile crossed fog lines, or where improper use of turn signal

-10-

and automobile straddled lanes, all in violation of Illinois law)).

Because Cpl. Smith witnessed the Nissan stop in the left lane blocking the flow of traffic, and then make a quick lane change causing other vehicles to swerve, the Court finds that the officer had probable cause to believe that the driver, Sellers, had committed a traffic offense, and posed a danger to others on the road. Therefore, this Court concludes that Cpl. Smith had probable cause to stop Sellers' car for committing a traffic violation, and that the stop was proper.

### Based on the Probable Cause Imputed to him Through the DEA

The DEA had probable cause to conduct a stop of Sellers' vehicle. The DEA had knowledge of conversations between the CI and Brian, in Texas, who was brokering a deal for the sale of a large quantity of crack and power cocaine between the CI and Sid. The phone calls between the CI and Brian revealed that Sid was at Champs. The DEA knew from the CI that Sid liked to drive fancy cars, and knew that he changed vehicles frequently. The silver Nissan in the parking lot of Champs was consistent with the type of vehicle Sid would drive, and present at the time and place expected pursuant to the recorded telephone conversations. It was one of two vehicles in the lot, and the only one with an occupant. The vehicle was backed in to the parking spot, which is consistent with a need to have a good view of the area and possibly escape with

ease.  Accordingly, the DEA could have stopped the silver Nissan even in the absence of a traffic violation.

The DEA, however, made a strategic decision to conduct a "walled off" stop of Sid whereby they would rely on the local police agencies independent probable cause rather than their own probable cause, in an attempt to protect the identity of their CI and the integrity of their ongoing investigation.  The Government argues that, even if Cpl. Smith lacked probable cause to stop and arrest Sellers for a traffic violation, the DEA's probable cause should be imputed to Cpl. Smith.

In *United States v. Celio*, 945 F.2d 180 (7th Cir. 1991), the DEA requested that state police stop and search a truck on suspicion of drug smuggling.  The truck was stopped, towed to the police station, and searched for four hours, based solely on the DEA's request.  The Seventh Circuit, relying on *United States v. Hensley*, 469 U.S. 221 (1985) upheld the search.  In so holding, it was noted that the state trooper was "merely acting as an 'extension' or agent of the DEA agent and she could act on the DEA agent's suspicions."  Similarly, Cpl. Smith was acting as an agent of the DEA, and had probable cause to stop the silver Nissan even in the absence of the traffic violation.  In fact, unlike the agent in *Celio*, Cpl. Smith was not acting blindly on the DEA's request; he possessed detailed information regarding the operation that the officer in *Celio* was lacking.

-12-

<u>Even if Cpl. Smith Lacked Probable Cause, he had Reasonable</u>
<u>Suspicion to Stop the Vehicle Under *Terry*.</u>

The Government also argued that, even if Cpl. Smith lacked probable cause, he had reasonable suspicion to conduct a traffic stop for further investigation under *Terry v. Ohio,* 392 U.S. 1 (1968). Probable cause is not necessary for police to conduct an investigatory stop, limited in scope and executed by reasonable means. *Terry*, 392 U.S. at 18-20. To make an investigatory stop, an officer needs only reasonable suspicion supported by articulable facts that criminal activity is afoot. *Id.; United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002). Reasonable suspicion is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Jackson*, 300 F.3d at 745 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

The reasonableness of a *Terry* stop is evaluated by looking at whether the officers' actions were justified at the inception of the stop; and whether the stop was reasonably related in scope to the circumstances that justified the stop in the first place. *Jackson*, 300 F.3d at 745 (citing *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000)). The totality of circumstances known to the officers at the time of the stop must be considered in making this evaluation. *Id.* (citing *Swift*, 220 F.3d at 506). The totality of the circumstances includes the "experience of the law enforcement agent and the behavior and characteristics of the suspect." *Id.* (quoting *United States v. Odum*, 72 F.3d 1279, 1284

-13-

(7th Cir. 1995)).

For the reasons articulated above, and based upon the totality of the circumstances, the collective knowledge of the DEA and Cpl. Smith constitutes reasonable suspicion to stop Sellers.  The series of recorded phone calls with the CI indicate that Defendant, a suspected drug dealer, was at Champs store to engage in a drug transaction.  Agent Davidson and Agent Ritchie drove the CI past Champs, and he observed the Nissan in the parking lot, and said it was similar to one Sid would drive.  That car was only one of two vehicles at Champs at that time, and the only one which was occupied by a black male.  Collectively, this information constitutes reasonable suspicion that Sellers was engaged in, or about to be engaged in criminal activity.

The reasonableness of a *Terry* stop is evaluated by looking at "whether the officers' actions were justified at the inception of the stop," (this Court just determined that the actions were justified), and "whether the stop was reasonably related in scope to the circumstances that justified the stop in the first place." *Jackson*, 300 F.3d at 745.  In this case, both the scope and the duration of the stop was proper.  Duration is a critical aspect of reasonableness and "the detention must last no longer than necessary to effectuate the purpose of the stop." *United States v. Childs*, 256 F.3d 559, 564 (7th Cir. 2001) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)), *vacated on other grounds*, 277 F.3d 947 (en banc)).  Here, there is no evidence that the detention was overly lengthy, and the Court does not believe it was an

-14-

unreasonably long seizure.   Furthermore, the scope of the search was not excessive.   Cpl. Smith's initial questioning about Defendant's license and registration is standard procedure, as is checking that information to determine if there are any outstanding warrants.   Cpl. Smith then noticed that Defendant was nervous, and learned that, after the stop occurred, the DEA had driven its CI past the vehicle slowly and the CI had identified the driver as the individual named Sid whom he expected to be delivering the 9 ounces of cocaine.   Moreover, the request to have Sellers exit the vehicle was proper to ensure the safety of all the parties.   *See Mimm*, 434 U.S. at 111.   Once outside the vehicle, Cpl. Smith asked Sellers if he had any weapons, and he replied that he had one in his vehicle. Sellers was unable to produce a valid permit that would allow him to possess the gun in Indiana.   At that point, there was probable cause to believe an offense had been committed, and Sellers was placed under arrest.   Additionally, even if Cpl. Smith had only reasonable suspicion to stop sellers initially, once Sellers produced his driver's license identifying himself as Sidney Sellers, Cpl. Smith had probable cause to believe Sellers was the individual whom the DEA was seeking in connection was its drug investigation.

It was Appropriate for Cpl. Smith to Order Sellers Out of the Vehicle

There was nothing inappropriate about Smith's order that

-15-

Sellers step out of the vehicle. Additionally, "when there is reasonable suspicion that the occupants of a vehicle are engaged in other illegal activity, an officer may prolong a traffic stop to investigate that activity." *United States v. Walden*, 146 F.3d 487, 490 (7th Cir. 1998). In this case, Cpl. Smith noticed that Sellers appeared to be very nervous, and he was fumbling through his wallet. Additionally, Cpl. Smith indicated he had concerns about his safety due to the position of Sellers vehicle on the expressway ramp, and desired to continue their conversation at the rear of the vehicle for that reason. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6 (1977)("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.")

Sellers cites *United States v. Wilkie*, 2006 WL 1307457, Nos. 05-2878, 05-3155, at *3 (7th Cir. May 5, 2006), and *United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir. 2005), for the proposition that when a defendant "appears nervous," this subjective impression contributes nothing to the objective basis for suspecting criminal activity. Nevertheless, other circumstances established a reasonable basis for Cpl. Smith to ask Sellers to step out of his vehicle and speak to him at the rear of Defendant's vehicle. For example, Cpl. Smith testified that he was concerned about his safety because the traffic stop occurred on the westbound I-80/94 and Grant Street ramp. As the United States Supreme Court has stated:

-16-

> The hazard of accidental injury from passing
> traffic to an officer standing on the driver's side
> of the vehicle may also be appreciable in some
> situations. Rather than conversing while standing
> exposed to moving traffic, the officer prudently
> may prefer to ask the driver of the vehicle to step
> out of the car and off onto the shoulder of the
> road where inquiry may be pursued with greater
> safety to both.

*Mimms*, 434 U.S. at 111.


The Inventory Search Was Reasonable

First, a police officer may lawfully impound a vehicle after arresting its driver if impoundment is in furtherance of the police department's public safety or community caretaking functions, consistent with standard department procedures, and if the arrestee is unable to provide for speedy and efficient removal of the car. *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996). In this case, the impoundment of Sellers' car was reasonable because he was stopped pursuant to a valid traffic stop and then arrested for possessing a handgun without the proper permit. The Gary Police Department has a standardized policy for impoundment which seems proper to this Court.


Second, once lawfully impounded, the police may inventory the contents of an automobile pursuant to standardized routine or procedure. *See South Dakota v. Opperman*, 428 U.S. 364, 368-60 (1976); *United States v. Jackson*, 189 F.3d 502, 508-09 (7th Cir. 1999). Inventory searches are a well recognized exception to the Fourth Amendment warrant requirement. *Colorado v. Bertine*, 479

-17-

U.S. 367, 376-77 (1987); *Opperman*, 428 U.S. at 372-73.  The Seventh Circuit has defined the permissible scope of a warrantless inventory search as constitutional if: (1) the individual has been lawfully arrested; and (2) the search satisfies the Fourth Amendment standard of reasonableness, *i.e.*, is conducted as part of a standard procedure incident to incarcerating an arrested person. *Jackson*, 189 F.3d 502 at 508.  Both requirements are satisfied here.  Defendant was lawfully arrested and, upon reviewing the entire record, the Court is satisfied that the inventory search was conducted pursuant to standard Gary Police Department procedure.

The *Opperman* Court identified three bases for permitting inventory searches: (1) to protect owner's property while it is in police custody; (2) to protect the police against claims or disputes over lost or stolen property; and (3) to protect the police and public from potential danger.  *Opperman*, 428 U.S. at 369.  All three bases were satisfied in this case.  The inventory search was consistent with the goal of protecting Defendant's property, as well as maintaining safety.  It also served to protect the police officers and the public in light of finding a loaded firearm inside the passenger compartment of the vehicle and a plastic bag which contained a substance that appeared to be cocaine. The inventory search of Sellers' Nissan was reasonable, and did not violate Defendant's constitutional rights.

CONCLUSION

For the reasons set forth above, the Motion to Suppress is

-18-

**DENIED.**


**DATED: May 20, 2008**                    **/s/ RUDY LOZANO, Judge**
                                           **United States District Court**