# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:08-CR-023 |
| | ) | |
| SIDNEY O. SELLERS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendant's Motion for Judgment of Acquittal Or New Trial, filed by Defendant, Sidney Sellers, on August 18, 2008. For the reasons set forth below, the motion is **DENIED**.

<u>BACKGROUND</u>

Defendant, Sidney Sellers ("Sellers"), was charged in a multi-count amended indictment with possession with intent to distribute 50 grams or more of crack cocaine, possession with the intent to distribute a quantity of cocaine, and possession of a firearm in furtherance of a drug crime. A jury trial was held in May of 2008. During that trial, at the close of the Government's case, Sellers orally made a motion for judgment of acquittal pursuant to Federal

Rule of Criminal Procedure 29(a).  (Trial Tr., pp. 458-59, 495.)
This Court denied the motion for acquittal.  (Trial Tr., pp. 460-63.)

On May 21, 2008, a jury verdict was returned against Sellers, finding him guilty of two counts of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts I and II), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

Sellers filed a motion for extension of time to file post trial motions on May 30, 2008, and taking into account Memorial Day on May 26, 2008, this Court granted an extension on June 2, 2008.[1] Following several other motions for extensions of time which were granted by this Court, and the appearance of Sellers' new counsel, Beau Brindley, the present motion was timely filed on August 18, 2008.  The Government filed its response on October 8, 2008.  On October 22, 2008, this Court ordered the Government to file an amended response citing to the trial transcripts.  The Government filed said response on November 4, 2008.  Finally, Sellers filed a

---

[1] Federal Rule of Criminal Procedure 33 establishes that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2). Federal Rule of Criminal Procedure 29 also establishes that a defendant "may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict . . . ."  Fed. R. Crim. P. 29(c)(1).

reply to the Government's response on November 7, 2008.  Thus, the motion is fully briefed and ripe for adjudication.

DISCUSSION

Federal Rule of Criminal Procedure 29(c) provides that a defendant may renew a motion for judgment of acquittal after a guilty verdict, and "the court may set aside the verdict and enter an acquittal."  Fed. R. Crim. P. 29(c)(1), (2).  Thus, Sellers may renew his motion even though this Court already denied a previous motion (made during trial at the end of the Government's case).  In ruling on a motion for acquittal, the Court must determine whether, at the time of the motion, there is relevant evidence from which a jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government.  *See United States v. Studley*, 892 F.2d 518, 526 (7th Cir. 1989).  The Court must "bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences." *United States v. Hagan*, 913 F.2d 1278, 1281 (7th Cir. 1990) (quotation omitted).  The inference of guilt of a criminal offense may be created by either direct or circumstantial evidence, and circumstantial evidence is of equal probative value to direct evidence.  *Studley*, 892 F.2d at 526.  All reasonable inferences that can be drawn from the evidence are viewed in the light most

favorable to the Government. *Id.* In other words, a motion for judgment of acquittal must be granted when the evidence, viewed in the light most favorable to the government, is so scant that the jury could only speculate as to the defendant's guilt, and is such that a reasonably-minded jury must have a reasonable doubt as to the defendant's guilt. *See United States v. Heberman*, 583 F.2d 222, 231 (5th Cir. 1978).

Federal Rule of Criminal Procedure 33 provides, in relevant part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994). A district court may "weigh evidence, evaluate credibility, and grant the motion if the substantial rights of the defendant have been jeopardized." *United States v. Eberhart*, 388 F.3d 1043, 1052 (7th Cir. 2004) (citation omitted), *vacated on other grounds*, 546 U.S. 12 (2005). A district court is not required to view the evidence in a light most favorable to the Government, but rather must independently consider the evidence presented. *Id.* The standard for granting a new trial under Rule 33 is less strenuous than the standard for granting a motion for judgment of acquittal under Rule 29(c). *See United States v. Alanis*, 265 F.3d 576, 591 n. 8 (7th Cir. 2001).

## Admission of Telephone Calls Bewteen CI and Brian LNU

During the course of the trial, this Court admitted into evidence recorded telephone calls between the Government's confidential informant ("CI") and an individual known as Brian, last name unknown ("Brian LNU"). Defendant argues that the Court erred in admitting what the Government alleged to be co-conspirator statements in the form of recorded calls between the CI and Brian LNU. Specifically, Sellers claims that the Government failed to prove that Defendant was a member of this conspiracy involving the declarants Brian LNU and the CI because the Government failed to establish that Sellers had any telephonic contact with Brian LNU on February 20, 2008. In response, the Government contends that co-conspirator statements are admissible because there is sufficient evidence to link Sellers to the statements.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a "statement" is not hearsay if it is "offered against a party" and is a "statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Both parties agree that admission of a co-conspirator statement against a defendant is proper where the Government establishes, by a preponderance of the evidence, that: (1) there was a conspiracy; (2) the defendants were members of the conspiracy; and (3) the statements were made during the course of

the conspiracy and in furtherance of it. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

In this case, and in line with this circuit's preferred method, the Government filed a written proffer of its evidence, and this Court held a pre trial hearing on the admission of statements of co-conspirators on May 12, 2008. Following argument by both parties, the Court ordered, pursuant to *Santiago*, that the co-conspirators statements were admitted subject to the condition that the existence of the conspiracy was established by a preponderance of the evidence by the close of the Government's case-in-chief. During the trial, the Court found that the conspiracy was indeed established by a preponderance of the evidence, thus the co-conspirator statements were admissible. (Trial Tr., pp. 457-58.)

Where Rule 801(d)(2)(E) is implicated, once the conspiracy is established, "only slight evidence is required to link a defendant to it." *United States v. Shoffner*, 826 F.2d 619, 627 (7th Cir. 1987). Additionally, "statements made during the course of and in furtherance of a conspiracy, even in its embryonic stages, are admissible against those who arrive late to join an ongoing concern." *United States v. Potts*, 840 F.2d 368, 372 (7th Cir. 1987).

In this case, there is sufficient information that Sellers was in the conspiracy and that the statements in question were made in furtherance of the conspiracy. For example, the Government

presented evidence that drug deals took place in the past between the CI, Sellers, and Brian LNU. (Trial Tr., pp. 361-63.) The evidence showed that Brian LNU would set up drug deals between the CI and Sellers and that Brian LNU was present during some of those meetings. (*Id.*) In addition, the CI was familiar with Brian LNU, and he testified that he was present when Sellers arrived at a house where Brian LNU was living in Indiana. (Trial Tr., pp. 362.) He also indicated that he had multiple conversations with Brian LNU while he was located in Arlington, Texas. (Trial Tr., pp. 368.) The CI was able to give the Drug Enforcement Agency ("DEA") agents a physical description of Sellers as well as to inform them as to what types of vehicles he had seen Sellers drive in the past. (Trial Tr., pp. 185.) The CI described Brian LNU as the "connect man." (Trial Tr., pp. 387.) Testimony established that on February 18, 2008, the CI called Special Agent Hubert Davidson of the Drug Enforcement Administration ("Agent Davidson") to inform him that he had arranged to purchase nine ounces of crack cocaine from an individual he knew as Sid and that Brian LNU was involved in the transaction. (Trial Tr., pp. 180-82.)

In listening to the recorded conversations between the CI and Brian LNU, it was clear that Brian LNU was in constant contact with Sellers. While Sellers argues that the Government did not provide any direct evidence that he had telephonic contact with Brian LNU on the day of the arrest, the Court finds that the Government

presented ample circumstantial evidence regarding the existence of a conspiracy between Brian LNU and Sellers during the time period in question. For example, on February 19, 2008, the CI advised Brian LNU that he was in Gary, Indiana, Brian would contact the person he was arranging the nine ounces of crack cocaine with, and would call the CI back. (Tr. Tran. pp. 184-85.) The CI advised the Government that he knew the person who was going to arrange the transaction as Sid. (*Id.*, p. 185.) During an attempt to set up a transaction at McDonald's, the CI made periodic telephone calls to Brian LNU to either ascertain how far out the person known as Sid was, and to attempt to identify any vehicle he might be driving to the location. (*Id.*, p. 188.) During one of the phone calls, Brian LNU advised the CI that Sid was only going to bring 63 grams of hard (crack cocaine) and the rest would be soft (powder cocaine). (Trial Tr., p. 186.) When Sellers was pulled over for a traffic stop, agents discovered approximately 62 grams of crack cocaine and approximately 186 grams of powder cocaine in the trunk of the car Sellers was driving. (Trial Tr., pp. 491-93.) Additionally, Agent Davidson testified that, in his presence, the CI received a recorded phone call from Brian LNU in which Brian LNU stated that three police cars had just pulled over Sid. (Trial Tr., p. 197.) Based on the information above, the Court is satisfied that the evidence presented at trial sufficiently established Sellers was a member of a conspiracy with Brian LNU during the time period in

question and that the recorded statements were made in furtherance of that conspiracy.

## Admission of Testimony Regarding Cellular Phone Screen

The Court also allowed the Government to introduce testimony from Officer Douglas Geyer ("Officer Geyer"), who testified that, while he was retrieving the gun from the car Sellers was driving, he saw Sellers' cellular telephone ringing with the name Brian appearing on the screen of the cellular telephone. (Trial Tr., p. 341.) Geyer stated, "I believe when I was retrieving the weapon from the vehicle, the cell phone in the car was ringing. I looked at the cell phone, and the name that was on the cell phone was Brian, like, incoming call from Brian on the cell phone." (Trial Tr., p. 341.) Sellers now argues that the Court erred by admitting this testimony because it constitutes inadmissible hearsay.[2]

The Court agrees with the Government's assessment that the appearance of the name "Brian" on the cellular telephone screen does not constitute a statement for purposes of the hearsay rule. Rule 801(c) of the Federal Rules of Evidence describes hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(a) of the Federal Rules of Evidence

---

[2] The Court notes that Sellers did not object to the testimony when it was presented during the trial.

defines a statement as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Clearly, the name "Brian" showing up on a cellular telephone screen is not a statement for purposes of the hearsay rule. Therefore, the admission of Officer Geyer's testimony regarding the cellular telephone screen was proper.

**Denial of Sellers' Motion to Suppress**

Prior to trial, the Court held an evidentiary hearing on May 15, 2008, regarding Sellers' renewed Motion to Quash Arrest and Suppress Illegally Obtained Evidence. After considering all of the evidence presented during the hearing and finding the testimony of the Government's witnesses credible, the Court denied Sellers' motion on May 20, 2008 (DE #45). In the instant motion, Sellers claims that the denial was erroneous because law enforcement lacked the reasonable suspicion necessary to detain a vehicle for an investigative detention and because the traffic violation for which Sellers was ultimately stopped did not constitute probable cause. He asserts the motion was denied erroneously and that the narcotics found in the car should have been suppressed, which would have led to the dismissal of the case. For the reasons set forth below, the Court does not agree.

The Fourth Amendment protects persons from unreasonable searches and seizures and this protection has been extended to the

states through the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); U.S. Const. Amend. IV. The Fourth Amendment prohibits a warrantless search, unless the search falls under one of the recognized exceptions to the warrant requirement. *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001). As explained more fully in the order dated May 20, 2008, the Court found that the Government met that burden because several different exceptions to the warrant requirement existed.

<u>Probable Cause Imputed to Law Enforcement Through the DEA</u>

Sellers claims that the facts and circumstances known to law enforcement at the time of the traffic stop made by Cpl. Smith were "limited to the vague idea that an individual named Sid possessed some form of cocaine and was, at that time, parked at Champs Liquor Store" (DE #72 at 6). However, the Court is satisfied that the DEA had ample probable cause to conduct a stop of Sellers' vehicle during the time period in question. Sellers greatly minimizes the information known at the time of the traffic stop. The DEA had knowledge of conversations between the CI and Brian LNU, in Texas, who was brokering a deal for the sale of a large quantity of crack

and power cocaine between the CI and someone named Sid.  The phone calls between the CI and Brian LNU revealed that Sid was at Champs Liquor Store.  The DEA knew from the CI that Sid liked to drive fancy cars and knew that he changed vehicles frequently.  The silver Nissan in the parking lot of Champs was consistent with the type of vehicle Sid would drive, and it was present at the time and place expected pursuant to the recorded telephone conversations. It was one of two vehicles in the parking lot, and the only one with an occupant.  The vehicle was backed into the parking spot, which is consistent with a need to have a good view of the area and possibly escape with ease.  Accordingly, the DEA could have stopped the silver Nissan even in the absence of a traffic violation.

Here, the DEA chose to request the assistance of local law enforcement officers in order to protect the integrity of an ongoing investigation.  They made a strategic decision to conduct a "walled off" stop whereby they would rely on the local police agency's independent probable cause to conduct a traffic stop, if possible, to protect the identity of their CI.  However, even in the absence of independent probable cause by local officers, the DEA's probable cause described above could be correctly imputed to local law enforcement officers.  *See U.S. v. Celio*, 945 F.2d 180 (7th Cir. 1991) (holding that state trooper was merely acting as an 'extension' or agent of the DEA agent and she could act on the DEA agent's suspicions.)  In the case at bar, local law enforcement

officers, including Cpl. Smith, possessed detailed information regarding the DEA's investigation and, therefore, had probable cause to believe that silver Maxima being driven by Sellers, was engaging in or was about to engage in criminal activity based on the information acquired through the DEA agents.

<u>Appropriateness of the Stop Under Terry v. Ohio</u>

Sellers argues that Cpl. Smith only had sufficient probable cause to approach the car in the Champs Liquor Store parking lot and that he was not justified in stopping Sellers once he exited the lot. Sellers claims that the traffic stop was not the least invasive course of action, and he intimates that Cpl. Smith waited until Sellers exited the lot in order to detain Sellers for a more lengthy period of time. Sellers asserts that Cpl. Smith lacked the reasonable suspicion necessary to detain the automobile for an investigative detention under *Terry v. Ohio*. As the Government correctly asserts, probable cause is not necessary for police to conduct an investigatory stop, limited in scope and executed by reasonable means. *Terry v. Ohio*, 392 U.S. 1 (1968). To make an investigatory stop, an officer needs only reasonable suspicion supported by articulable facts that criminal activity is afoot. *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002). Reasonable suspicion is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal

activity." *Jackson*, 300 F.3d at 745 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

The reasonableness of a *Terry* stop is evaluated by looking at whether the officers' actions were justified at the inception of the stop, and whether the stop was reasonably related in scope to the circumstances that justified the stop in the first place. *Jackson*, 300 F.3d at 745 (citing *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000)). The totality of circumstances known to the officers at the time of the stop must be considered in making this evaluation. *Id.* The totality of the circumstances includes the "experience of the law enforcement agent and the behavior and characteristics of the suspect." *Id.* at 746 (quoting *United States v. Odum*, 72 F.3d 1279, 1284 (7th Cir. 1995)).

As described above, law enforcement officers had reasonable suspicion to detain Sellers. In fact, they had probable cause to do so based on the information imputed to them through the DEA. The totality of the circumstances and the collective knowledge of Cpl. Smith and the DEA at the time of the traffic stop indicated that the driver of the silver Maxima was engaging in or about to engage in criminal activity. Sellers' assertion that any justifiable basis for stopping the vehicle evaporated when Sellers exited the parking lot and headed towards the on-ramp of the nearby expressway is meritless. The credible testimony of Cpl. Smith established that he had observed the car in the parking lot at

Champs Liquor Store, and he was in the process of approaching the store. However, the car Sellers was driving was then positioned at the entrance/exit to the parking lot, appeared to be ready to pull out onto the street, and had actually pulled out of the parking lot as Cpl. Smith was passing it. (May 15, 2008 Hearing Tr., pp. 69-70.) The traffic stop occurred immediately after the car Sellers was driving had passed Cpl. Smith and had started to get on the expressway ramp. (*Id.* at 70.) This sequence of events is not unreasonable, and Cpl. Smith was justified in stopping the vehicle after it had pulled out of the parking lot. In addition, there is no evidence that the detention was too lengthy, and the Court does not believe that an overly long search was conducted. Therefore, the stop conducted by Cpl. Smith, if characterized as an investigative detention under *Terry v. Ohio*, was proper.


Independent Probable Cause

Next, Sellers argues that the traffic violation that led Cpl. Smith to stop Sellers did not warrant independent probable cause. Although, as established above, the Court finds Cpl. Smith had probable cause to stop the vehicle Sellers was driving based on probable cause imputed to him through the DEA, the Court is also convinced that Cpl. Smith had independnt probable cause to conduct a traffic stop. The Supreme Court has held that a decision to stop an automobile is reasonable when the police have probable cause to

believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). "Ulterior motives do not invalidate a police stop for a traffic violation, no matter how minor, if a motor vehicle law infraction is detected." *United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996); *see also Whren*, 517 U.S. at 810 (holding that the "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.")

As described more fully in this Court's May 20, 2008 order, the Court found credible Cpl. Smith's testimony that he saw the silver Nissan in question stop in the left lane blocking the flow of traffic, and make a quick lane change to the right lane, causing vehicles to swerve to avoid colliding with the Nissan.

Sellers argues that the traffic violations described above do not amount to probable cause because, after being pulled over, Sellers had explained to Cpl. Smith that he had stopped to avoid an accident. Sellers claims, "If Smith observed Mr. Sellers put on his brakes, he also observed the fact that he did so to avoid a collision. Any reasonable police officer would know that avoiding a collision is a legitimate defense against any minor traffic violation." (DE #72 at 10.) However, to the extent Sellers argues

16

that improper lane usage was too minor of an offense to justify the stop or that it was defensible because of his desire to avoid a collision, the Seventh Circuit has indicated that "our objective analysis is indifferent to the relatively minor nature of the traffic offense." *United States v. Williams*, 106 F.3d 1362, 1365-66 (7th Cir. 1997) (citing United *States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996) (probable cause existed where automobile was missing rear license plate in violation of Wisconsin law); *United States v. Smith*, 80 F.3d 215 (7th Cir. 1996) (probable cause was formed where air freshener hanging from rear view mirror, or where cracked windshield and automobile crossed fog lines, or where improper use of turn signal and automobile straddled lanes, all in violation of Illinois law)). Thus, even if Sellers had been stopping and swerving to avoid an accident, Cpl. Smith was justified in pulling him over for the violations he witnessed.

Next, Sellers argues that the violation could not have occurred in the manner that Cpl. Smith described. He claims that Agent Davidson's testimony during cross-examination contradicted Cpl. Smith's testimony that his car was located in front of Sellers' car when he witnessed the traffic violation. He also argues that Agent Davidson should have been able to see the violation for himself because he was only a few car lengths back. The Court has reviewed the transcript from the hearing, and finds, as it did at the time of the hearing, that the testimony as a whole

is credible.  The Court accepts Cpl. Smith's version of the facts as true based on his testimony at the hearing.  Any minor inconsistencies regarding Agent Davidson's testimony during cross-examination do not detract from the credibility of Cpl. Smith's testimony as a whole.  Also, the testimony does not compel the conclusion that Agent Davidson must have seen the violations from his position.  Therefore, in addition to the probable cause imputed to him through the DEA, this Court concludes that Cpl. Smith had probable cause to stop Sellers' car for committing a traffic violation and that the stop was proper.

Overall, the Court concludes that there was ample relevant evidence from which a jury could reasonably find the defendant guilty beyond a reasonable doubt based on the facts outlined above, and the Court does not feel that a new trial is warranted by the interests of justice.

## Sixth Amendment Right to Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and the Supreme Court has held that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). There is a presumption in favor of a defendant's right to counsel

of choice. *Wheat v. United States*, 486 U.S. 153, 164 (1988). Accordingly, the Sixth Amendment bars a court from denying a defendant the right to retain counsel of his choice arbitrarily or unreasonably. *Ford v. Israel,* 701 F.2d 689, 692 (7th Cir. 1983).

Although neither Sellers nor the Government addresses the issue of the Fourteenth Amendment's Due Process Clause directly, the Court notes that "motions for substitution of retained counsel and for a continuance can implicate both the Sixth Amendment right to counsel of choice and the Fourteenth Amendment right to due process of law." *Carlson v. Jess*, 526 F.3d 1018, 1025 (2008). Trial courts have broad discretion on matters of continuances, including balancing the right to counsel against the demands of its calendar. *See Morris v. Slappy,* 461 U.S. 1, 11 (1983). "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Id.* "[O]nly an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Id.* at 11-12. To determine whether a district court erred in denying a continuance, "both the circumstances of the ruling and the reasons given by the judge for it" are considered. *United States v. Santos*, 201 F.3d 953, 958 (7th Cir. 2000).

19

Here, Sellers argues that the Court's failure to grant his request for a continuance to allow his counsel of choice time to prepare for trial amounts to a structural error that denied Sellers his Sixth Amendment right to counsel of choice. The events involving choice of counsel leading up to trial are described below. On February 20, 2008, Sellers appeared without counsel for an initial appearance before Magistrate Judge Andrew P. Rodovich. (DE #3.) On February 22, 2008, a detention hearing was held before Judge Rodovich at which Attorney Michael Oppenheimer ("Attorney Oppenheimer") appeared on behalf of Sellers as his choice of retained counsel. (DE #5.) Sellers was arraigned on March 13, 2008, and Attorney Oppenheimer again appeared for Sellers. (DE #13.) At that time, trial was set for May 12, 2008, and all pretrial motions were due by April 12, 2008.

A pre-trial conference was held before Judge Rodovich on May 2, 2008. (DE #17.) At that hearing Attorney Oppenheimer again appeared on behalf of Sellers, and he indicated that he would be filing a motion to continue the trial and a motion to suppress. The Motion to Quash Arrest and to Suppress Evidence was not filed by Attorney Oppenheimer until four days later on May 6, 2007 (DE #19), nearly a month beyond the date pretrial motions were due. This Court held a status conference on that same day, and an attorney by the name of Franco LaMarca appeared in person but without formal appearance on behalf of Attorney Oppenheimer and

Sellers due to Attorney Oppenheimer's scheduling conflicts. (DE #25.) At that hearing Attorney Franco LaMarca did not indicate that anyone other than Attorney Oppenheimer would be representing Sellers.

The Motion for Continuance of the trial was filed by Attorney Oppenheimer on May 7, 2008 (DE #26), three business days before the scheduled start of the trial. In that motion, the Court learned for the first time that someone named David Weiner ("Attorney Weiner"), who never appeared in the case formally or otherwise, was apparently lead attorney and counsel of choice for Sellers. However, as Attorney Weiner had not filed an appearance before the Court, prior to that time, the Court was unaware that Sellers wanted anyone other than his retained counsel, Attorney Oppenheimer, to represent him. The Motion for Continuance, filed by Attorney Oppenheimer, requested the continuance be granted to allow Sellers an opportunity to have his Motion to Quash Arrest and Suppress Illegally Obtained Evidence, which was filed nearly a month beyond the stated deadlines, be heard before the Court. The motion did not address any concerns regarding Attorney Weiner's proposed representation and preparation time for the trial itself. On May 7, 2008, the same day the Motion for Continuance was filed, the Court denied that motion because it was deficient, riddled with inconsistencies, and because Attorney Oppeneheimer repeatedly ignored deadlines in the case and provided no reasons for the

failures.  (DE #30.)  The trial date of May 12, 2008, was reaffirmed.

On May 9, 2008, this Court held another hearing, and Attorney Oppenheimer indicated that Attorney Weiner had not yet filed an appearance but would do so by the end of the day.  (DE #32.)  It was not until this hearing on May 9, 2008, the last business day before the scheduled start date of the trial, that Attorney Oppenheimer informed the Court that Attorney Weiner, who had yet to file an appearance in the case, was scheduled for trial in state court on May 12, 2008 and would not be available for the scheduled trial date. (*Id.*)  At that time, Attorney Oppenheimer orally moved for a continuance of the trial based on Attorney Weiner's apparent unavailability on May 12, 2008.  (*Id.*)  The Court notes that Attorney Weiner himself never provided any information regarding scheduling conflicts or conflicting trial settings.  However, as a courtesy to counsel, the Court ordered the jury trial be reset for May 19, 2008, one week after the original scheduled trial date. (*Id.*)

On May 12, 2008, the Court held a hearing on the Government's *Santiago* proffer, and Attorney Oppenheimer appeared on behalf of Sellers.  (DE #36.)  Attorney Oppenheimer informed the Court that Attorney Weiner still had not filed an appearance but would do so by the end of the day.  (*Id.*)  On May 15, 2008, the Court held a hearing on the Motion to Quash Arrest and Suppress Illegally

22

Obtained Evidence. (DE #40.) Attorney Weiner had not yet filed an appearance, and the Court again reaffirmed the trial setting for May 19, 2008.

On May 16, 2008, the Court held a status hearing as to Sellers. (DE #41.) Attorney Oppenheimer was again present to represent Sellers, and Sellers orally informed the Court that he wished to fire his attorney. After discussion between the Court and all parties present, Sellers indicated that while he still wished to fire him, he would like to keep Attorney Oppenheimer until new counsel appeared on his behalf. (*Id.*) This hearing took place on the business day before the scheduled start date of the trial. The Court advised Sellers that he could fire his attorney at any time and could retain new counsel of his choice but that the trial would proceed as rescheduled on May 19, 2008. (*Id.*)

Finally, on May 19, 2008, the day trial was scheduled to begin, the Court held a hearing to again discuss the representation issues. (DE #43.) Attorney Oppenheimer was present to represent Sellers, but another attorney by the name of Santos Volpe ("Attorney Volpe") also appeared. (DE #43.) Attorney Volpe advised the Court that he was asked to appear by Sellers and that he would file an appearance only if the Court would grant a continuance of the trial. (*Id.*) The Court advised all present that Sellers had the choice to keep Attorney Oppenheimer on as counsel, fire Attorney Oppenheimer and have Attorney Volpe

represent him, or proceed *pro se*, but that the case was going to trial as scheduled.

As explained during the hearing, the Court had attempted to accommodate counsel and Sellers by moving the trial date back by one full week and by allowing the motion to suppress to be heard at the last minute and beyond the deadlines given by the Court, after counsel explained that the motion to suppress was the biggest issue. (Trial Tr., pp. 5-6.) The Court expressed concern that there had been repeated promises that Attorney Weiner was going to appear on behalf of Sellers, but that he never filed an appearance (Trial Tr., pp. 6-8) despite the fact that Attorney Oppenheimer and Sellers claimed that he was "lead counsel" for the case from its inception. In the week leading up to trial, the Court made it clear that the case would proceed as scheduled, and both Attorney Oppenheimer and Attorney Volpe agreed that they had been informed of that fact. (Trial Tr., pp. 7-10.) Attorney Volpe further stated that both Sellers and Attorney Oppenheimer made it clear to him that the trial date was set. (Trial Tr., p. 10.)

After all issues were discussed, Attorney Volpe declined to enter the case on behalf of Sellers, and Sellers agreed to keep Attorney Oppenheimer "under protest." (Trial Tr., p. 13.) The undersigned advised Sellers:

> You can say it's under protest, Mr. Sellers, then you're disagreeing with the legal system because you were notified of the trial. You appeared before Judge Rodovich, and this was

set, and then I continued it at the request of
all counsel for a week or so to accommodate
you.  So I made it clear every step of the way
this case was going to go to trial on the date
set by the Court, and when I continued it, it
was with the agreement that this case would be
ready to go to trial either with Mr.
Oppenheimer of Mr. Weiner at that time. . . .
[Y]ou never talked to the court about your
dissatisfaction about the fact that [Mr.
Weiner] said he was going to appear or not
appear.  And at some point, Mr. Sellers, the
light would have gone on and said, Hey, I've
got a problem.  This attorney hasn't come into
the case.

(Trial Tr., pp. 13-15.)

Despite Sellers' attempt to recast the facts in a light more

favorable to his position,[3] the Court is satisfied that neither the

denial of the original Motion for Continuance[4] nor the oral request

---

[3] For example, in Defendant's Motion for Judgment of Acquittal or New
Trial (DE #72), Sellers states that, in the Motion for Continuance filed on
May 7, 2008, Attorney Oppenheimer informed the Court that Mr. Weiner might not
be available for the scheduled trial date.  This is factually incorrect as no
such statement was made in the Motion for Continuance.  It was not until a
hearing on May 9, 2008, the last business day before the originally scheduled
start date of the trial, that the Court was orally informed by Attorney
Oppenheimer that Attorney Weiner (who had not filed an appearance in the case)
was unavailable for trial due to his scheduling conflicts.  Additionally, in
Defendant's Motion for Judgment of Acquittal or New Trial, Sellers states,
"Two weeks prior to Mr. Sellers's final trial date, the Court was informed
that Mr. Weiner had scheduling conflicts that rendered it difficult for him to
appear at trial.  The court denied Mr. Sellers's request for a continuance on
this basis."  (DE #72, p. 12.)  Again, the Court notes that no mention of
Attorney Weiner's scheduling conflicts was made in the Motion for Continuance
filed on May 7, 2008.  While the Court denied that motion, Sellers fails to
acknowledge the fact that the Court held a hearing on May 9, 2008, the last
business day before the originally scheduled start date of the trial, and
ordered the jury trial reset for May 19, 2008, as a courtesy to counsel.
Finally, in Defendant's Motion for Judgment of Acquittal or New Trial (DE
#72), Sellers states that "[h]is choice to proceed to trial without Mr.
Oppenheimer had been made apparent for nearly a month by the time that Mr.
Volpe was retained."  As described more fully in the events leading up to
trial above, this statement is false.

[4] Again, the Court notes that a hearing was held after this denial, and,
as a courtesy to counsel, the trial was continued by one week.

25

for a continuance to allow Attorney Volpe to prepare for trial, made on the day trial was scheduled to begin, amounted to structural error or resulted in the deprivation of Sellers' Sixth Amendment rights. To make his argument, Sellers relies heavily on *Carlson v. Jess*, 526 F.3d 1018 (7th Cir. 2008). In *Carlson*, the Seventh Circuit held that the trial court's denial of a defendant's motion for a substitution of retained counsel and a continuance violated the defendant's constitutional rights. In that case, ten days before the scheduled start date of the trial, the defendant notified his original attorney that he had hired a new attorney to replace him due to breakdowns in communication and differences of opinion. *Carlson v. Jess*, 526 F.3d 1018, 1020 (7th Cir. 2008). The trial court judge did not rule on the motion to substitute attorneys until the day before the scheduled start date of the trial, and at that time he denied the motion stating that there were issues with the orderly administration of the court, the victim's young age, and the tardiness of the motion to withdraw. *Id*. at 1021. The Seventh Circuit Court of Appeals held that the denial of the motion was arbitrary.

In the case at bar, however, this Court made every attempt to accommodate Sellers and did not deny the motion arbitrarily. The Court continued the trial date by one week to allow the untimely filed Motion to Suppress to be heard and to allow his attorney time to prepare for trial. Although Sellers claims in his reply that

this "limited continuance . . . did not provide the defendant's counsel of choice (Mr. Weiner) with sufficient time to appear" (DE #91 at 8), the Court finds this statement to be at odds with his claim that "[a]ll of the evidence suggests that Mr. Sellers was expecting, from the very beginning of his case, to be represented by different counsel at trial" (*Id*. at 10). Assuming Sellers' statements are true, he provides no reason why Attorney Weiner or another attorney of his choice could not have entered an appearance as early as February 22, 2008, the date on which Attorney Oppenheimer entered an appearance on behalf of Sellers, or shortly thereafter. If, in fact, Attorney Weiner was lead counsel from the beginning of the case, he had ample time to enter an appearance and to make any motions he so desired. On numerous occasions, Attorney Oppenheimer promised the Court that Attorney Weiner would appear by the end of a day certain. He did not do so. The Court never denied a request for an appearance by Attorney Weiner because no request by him was ever made, and the Court never denied any motions made by Attorney Weiner because no motions were made by Attorney Weiner. As such, the Court is convinced that Attorney Weiner was provided with ample time to appear, if in fact that was what he wished to do.

It was only made clear to the Court over two months later, less than one week before the original start date of the trial, that Sellers still wished Attorney Weiner to be his "lead counsel"

of choice.  After that time, the Court repeatedly advised Sellers that Attorney Oppenheimer could be replaced by Attorney Weiner, or another attorney, at any time prior to the rescheduled trial date. Unfortunately for Sellers, Attorney Weiner never entered an appearance before this Court, nor did Attorney Weiner himself make a motion for continuance or any other motion.  While Sellers attempts to argue that he was prejudiced by this fact and states that he "should not be punished because Mr. Weiner did not file his appearance as both Mr. Sellers and Mr. Oppenheimer expected" (DE #91 at 9), it was Sellers' responsibility, and not the responsibility of this Court, to assure the appearance of his own counsel of choice.  Sellers did not do so.

The last minute effort on the morning of the first day of trial made by Attorney Volpe to enter an appearance, contingent on the Court granting a continuance, was not only untimely but also questionable in terms of Sellers' motive.  Leading up to trial, the Court repeatedly questioned the numerous promises made by Attorney Oppenheimer and Sellers regarding the appearance of the elusive Attorney Weiner.  Promises to appear were made on behalf of Attorney Weiner, and those promises were broken many times. However, Sellers did not bring any concerns regarding Attorney Weiner's non-appearance to the Court's attention until shortly before trial.  Instead, he and Attorney Oppenheimer repeatedly assured the Court that Attorney Weiner would materialize.  He never

did. On the morning of trial Sellers brought an entirely different attorney with him to Court. Based on the circumstances described above, it is reasonable for the Court to assume such tactics were attempt by Sellers to delay trial and manipulate the orderly progress of his case. *See U.S. v. Carrera*, 259 F.3d 818, 825 (7th Cir. 2001) (The untimely nature of the defendant's motion coupled with its close proximity to trial, as well as the fact that the defendant was unable to name his new counsel one week before the trial was scheduled to begin, made it reasonable for the district court to question whether the motion was an attempt to delay the proceedings.)

Additionally, prior to the start of trial, the Court expressed concerns regarding overall scheduling issues, numerous other cases on the docket, and the fact that the jury was already assembled and waiting downstairs. Although not revealed to the parties at that time, the undersigned was scheduled to undergo major surgery roughly two months after the Sellers trial. In fact, the undersigned is still recovering from said medical condition and has not yet been medically released to resume full-time work at the courthouse. When denying to continue the trial further, the undersigned was cognizant that any delay would magnify existing scheduling issues on the docket. The Court's calendar was set with numerous jury trials, including a complicated two week trial, in the time period leading up to the surgery. Therefore, while

Sellers makes much of the fact that the undersigned briefly mentioned the cancellation of his attendance at the Seventh Circuit Judicial Conference as one of the reasons for the denial, this was clearly not the only scheduling concern of this Court. Sellers states, "With all respect to the inconvenience caused to the Court, the cancellation . . . does not justify depriving the defendant of his constitutional right to counsel of choice." (DE #91 at 11.) The Court agrees with this assertion and at no time was this cancellation deemed the only reason for the denial.

As Sellers notes in his Motion for Judgment of Acquittal or New Trial, criminal defendants "should be afforded a fair opportunity to secure counsel of his own choice." U.S. v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006) (*quoting Powell v. Alabama*, 287 U.S. 45, 53 (1932)). At no time did the Court act arbitrarily or capriciously. Based on the events described above, Sellers was given that opportunity and his Sixth Amendment rights were not violated and, as such, a new trial is not warranted.


CONCLUSION

For the reasons set forth above, the Defendant's Motion for Judgment of Acquittal or New Trial is **DENIED**.


DATED: **January 8, 2008**                **/s/RUDY LOZANO, Judge**
                                           **United States District Court**